

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW YORK DIVISION

2020 FEB 25  A II: 33

Christine Hammond and Nicholas Taylor, Plaintiffs

v.

BMW OF NORTH AMERICA, LLC,

BAVARIAN. MOTOR WORKS AG,

DAVID BERGAMATTO PARK AVE BMW

JURY TRIAL DEMANDED

20-1994 (km)

Defendants

Plaintiffs Christine Hammond, and Nicholas Taylor hereby bring this complaint against defendants, BMW of North America LLC ("BMW-NA"), and Bavarian Motor Works "BMW-GER") (together, "BMW" or "Defendants"). All allegations in this Complaint are based upon information and belief except those allegations which pertain to Plaintiffs, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigations and the investigations conducted by the Plaintiffs. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

IDENTIFICATION OF PARTIES (LOCAL RULE 10.1)

1. The names and addresses of the named parties to this action are as follows: (i)

Plaintiffs, Christine Hammond and Nicholas Taylor, Yonkers, New York and Paterson, New Jersey; (ii) Defendant BMW OF NORTH AMERICA, LLC, 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey. (iii) Defendant Bavarian Motor Works ("BMW-GER"), is corporation organized and existing under the laws of Germany, with its principal place of business located in Munich, Bavaria, Germany.

INTRODUCTION

2. Plaintiffs brings this action individually after having purchased a defective BMW

vehicle that was designed, manufactured, distributed, marketed and sold by defendants.
3. Defendants designed, manufactured, distributed, marketed and sold this vehicle,

equipped with 4.4-liter V-8 turbocharged "N63' engine to Plaintiffs.

4. Since 2008, defendants knew or should have known that the vehicle contained one or more design and/or manufacturing defects, but not limited to, defects contained in the vehicle engine that caused them to improperly burn off and/or consume abnormally high amounts of oil ( the "Oil Consumption Defect") and causes premature wear of the engine battery resulting in

COMPLAINT

NO.:

JURY TRIAL DEMANDED

the need to replace the battery as often as every ten thousand or one year, well before the useful life of an automotive battery(the "Battery Defect").

5. Motor oil functions as an essential lubricant for the moving parts in internal combustion engines. The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear. Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. As a result, this vehicle needs the proper amount of engine oil in order for the engine and its related parts to function safely.

6. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, this Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while this vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the vehicles drivers, their passengers and others who share the road with them to serious risk of accidents and injury.

7. Moreover, because the Oil Consumption Defect can cause the vehicle to consume unacceptably high amounts of engine oil, the rate of oil consumption for the vehicle can be as high as one (1) quart of oil per 750 miles driven. In our case, sometimes, even having been driven under 200 miles. The Oil Consumption Defect thus requires the addition of substantial amounts of oil between scheduled oil changes and can result in engine damage. Indeed, as a result of the Oil Consumption Defect, the potential safety hazards, and Defendants' refusal to acknowledge its existence and fix the problem, many consumers have reported that they have resorted to purchasing an extra supply of oil and carrying it with them in their trunk at all times when driving.

8. Based on information and belief, the premature battery wear is the result of excessive energy demands placed on the battery by the N63 engine's cooling system components. Despite knowledge of the N63's increased energy demands, Defendants failed to incorporate in their initial design a power source that could adequately provide for the N63's energy demands, instead providing an insufficient 90 ampere hour (Ah) battery as original equipment.

9. Defendants first acknowledged this defect when they issued Technical Service Bulletin SI B61 30 14 in December 2014, in which they instructed BMW dealers to replace the batteries of vehicles with the N63 engine at every engine oil service covered under the 4 year/50,000 miles BMW Maintenance Program.

10. Plaintiffs reasonably expected that their vehicle would not experience the Oil Consumption and Battery Defects during foreseeable and normal usage, including, but not limited to, the expectation that the vehicle would not require unreasonably frequent oil changes/ additions between scheduled oil changes and that the vehicle would not suffer from a dangerous defect that could cause the vehicle to unexpectedly seize during operation, thereby causing the potential for accidents and injuries. These are the reasonable and objective expectations of consumers.

11. Prior to purchasing the vehicle, Plaintiffs did not know, nor could they have known, that the vehicle suffered from the Oil Consumption and Battery Defects and did not contemplate

that the vehicles' engines would be unable to prevent substantial amounts of oil from being consumed due to defects contained therein and thereby requiring costly supplemental oil to be added between scheduled oil changes, as well as other related repairs that can cost hundreds to thousands of dollars.

12. In fact, Plaintiffs were advised at the time they first took possession of their car, that they had to have the engine oil replaced every 15,000 miles or two (2) years. However, in December 2014, Defendants issued a bulletin B001314 stating that BMW was changing this requirement, and that the vehicle should now have the engine oil serviced every 10,000 miles or twelve (12) months, a significant increase in the frequency of required oil servicing. Defendants issued this bulletin solely to their authorized service centers, however, failing to notify consumers of this defect and the significant change in the suggested engine oil service interval.

13. Plaintiffs were informed and believe, and based thereon alleges, that Defendants knew or should have known that the vehicles is defective and suffer from the Oil Consumption and Battery Defects and are not fit for their intended purpose of providing consumers with safe and

reliable transportation. Nevertheless, Defendants have actively concealed and failed to disclose this defect from Plaintiffs at the time of purchase.

14. Defendants knew and concealed the Oil Consumption and Battery Defects that are contained in the car, along with the attendant dangerous safety problems and associated costs, from Plaintiffs at the time of sale and thereafter. This undisclosed defect has caused Plaintiffs and prospective Class Members to experience the Oil Consumption and Battery Defects throughout the life of the vehicle, which includes use within the warranty period. Had Plaintiffs known about the Oil Consumption and Battery Defects at the time of sale, as well as the associated costs related to these defects and/or the safety hazards described herein, Plaintiffs would not have purchased the vehicle or would have paid less for it.

15. Moreover, despite notice of the Oil Consumption and Battery Defects from various internal sources, Defendants have not recalled the vehicle to repair the Oil Consumption and Battery Defects, have not offered all of their customers a suitable repair or replacement free of charge, and have not offered to reimburse all vehicle owners and leaseholders who incurred costs relating to the Oil Consumption and Battery Defects, including costs related to inspections/ diagnosis, repairs, additional engine oil between service intervals and increased maintenance costs as a result of Defendants' decreased engine oil service intervals.

16. As a result of their reliance on Defendants omissions and/or misrepresentations, owners and/or lessees of the vehicle have suffered ascertainable loss of money, property, and/or loss in value of their vehicle.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction of this action pursuant to the 28 U.S.C. §§ 1332(d) (2) and (6) because: (i) there is an aggregate amount in controversy exceeding $250,000 in punitive damages; and (ii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant BMW of North America, LLC, resides and is headquartered in this district, regularly transacts substantial business in this district, are subject to personal jurisdiction in this district, and therefore is deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class

Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

19. This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed the vehicle into the stream of commerce within New Jersey and throughout the United States.

## THE PARTIES

### PLAINTIFF

20. Plaintiffs Christine Hammond and Nicholas Taylor are, and at all relevant times herein was, a resident of the State of New York, living in Yonkers. On November 5, 2016, Plaintiff purchased a certified pre owned 2013 BMW 750li from Greenwich BMW, an authorized BMW retailer located at 355 West Putnam Ave, CT 06830. Plaintiffs purchased this vehicle primarily for her personal, family, or household use. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by BMW.

21. Plaintiffs relied on the existence and length of Defendant's Certified Pre Owned Warranty prior to purchasing this vehicle. Plaintiffs reasonably expected that thier vehicle and its components, including engine oil consumption rate and battery, would not be defective and would continue to function normally in accordance with Defendant's specifications and representations.

22. On January 10, 2017 with approximately 22,036 miles on the odometer, Plaintiffs visited the BMW service center at Portchester BMW service center for complaints regarding the oil being consumed at an abnormally high rate. BMW's service technicians determined that Plaintiff's vehicle needed an engine oil service, under the warranty, because of the engine malfunction light that came on and that the oil was low. BMW's service technicians recommended that the oil consumption be monitored.

23. On March 15, 2017 with 26,482 miles on the odometer, Plaintiffs returned to the dealership for oil, break fliud and the car shaking. Plaintiffs also complained of the fact that, along with the "check engine oil" light activating, the vehicle would ride rough and shake.

24. Thereafter, when we took the car into Portchester BMW service center on April 18, 2017 with 27,928 miles on the odometer plaintiffs stated in the invoice that the low oil light came on

which verified that the service bulletin SI b11 04 13. It found the the oil level was well below specification at six quarts. Plaintiffs were told they would have to return when the oil level light is

back on in 1,000 miles because it was consuming an abnormal amount of oil. There was only one quit of oil added even though the engine oil level was well below specification.

25. Subsequently, Plaintiffs brought the vehicle in to the BMW service center on five more occasions due to complaints of abnormal oil consumption, engine malfunction and the car shaking. Each time, Plaintiffs where advised that the high rate of oil consumption was "normal." In fact, an oil consumption test was done on May 23, 2017. At the time this oil consumption test took place, Plaintiffs were advised by BMW's technicians that the oil consumption was

"normal" ,even though the low oil light came on to add a quart of oil. DEFENDANTS

26. Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States. Furthermore, Defendants design, develop, manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the vehicle we own, 2013 BMW 750li.

27. Defendant Bavarian Motor Works ("BMW-GER"), is a corporation organized and existing under the laws of Germany, with its principal place of business located in Munich, Bavaria, Germany. BMW-GER is the parent corporation of BMW of North America, LLC.

28. Defendant BMW-NA, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey. BMW-NA is BMW-GER's U.S. sales and marketing division, which oversees sales and other operations across the United States. BMW-NA distributes BMW

vehicles and sells these vehicles through its network of dealers. Money received from the purchase of a BMW vehicle from a dealership flows from the dealer to BMW-NA.

29. BMW-NA and BMW-GER sell BMW vehicles through a network of dealerships that are the agents of BMW-NA and BMW-GER.

30. There exists, and at all times herein existed, a unity of ownership between BMW- NA, BMW-GER and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

31. Upon information and belief, Defendant BMW-GER communicates with Defendant BMW-NA concerning virtually all aspects of the BMW products it distributes within the United States.

32. Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the vehicles engine as it relates to the engine defect within the vehicle performed exclusively by Defendants BMW- NA and BMW-GER.

33. Upon information and belief, Defendants BMW-NA and BMW-GER developed the post-purchase owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the vehicle.

34. BMW engages in continuous and substantial business in New Jersey.

35. Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

36. Defendants are engaged in the business of designing, manufacturing, warranting, marketing, advertising and selling vehicles under the "BMW" brand name throughout the United States.

37. In or around 2008 through the present, Defendants have designed, manufactured, distributed, sold the vehiclele in New Jersey, Connecticut and throughout the United States equipped with the N63 twin turbo V8 engine. The N63 engine was unique in that the exhaust manifolds and turbochargers are located between the banks of cylinders and the intake manifolds are located on the outside of the engine; the opposite of the traditional arrangement for a V8 engine.

38. Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, hundreds of thousands of the vehicles nationwide.

39. The vehicle contains one or more design and/or manufacturing defects, including but not limited to defects contained in the vehicles' engines that cause them to consume abnormally high amounts of oil, requiring the frequent addition of oil to maintain safe oil level in the vehicle at all times, and place demands on the battery that causes the battery to wear out prematurely,

requiring frequent replacement of the battery. As used herein and throughout, the term vehicle means all BMW automobiles equipped with the N63 twin turbo-charged V8 engine.

A. The Oil Consumption Defect Within the Vehicle

40. Plaintiffs have been informed and believes, and based thereon alleges that BMW acquired its knowledge of the Oil Consumption Defect since at least 2008, if not before, through sources not available to Plaintiffs, including but not limited to pre-release testing data, early consumer complaints about the Oil Consumption Defect to Defendants and their dealers, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for the vehicle, and from other internal sources.

41. Defendants had a duty to disclose the Oil Consumption Defect and the associated out-of-pocket repair costs to the Plaintiffs because the defect poses an unreasonable safety hazard, and because Defendants had exclusive knowledge or access to material facts about the vehicle and engines that were and are not known or reasonably discoverable by the Plaintiffs.

Defendants, however, failed to disclose the Oil Consumption Defect to consumers prior to or at the time of purchase.

42. Instead, Defendants have issued several technical service bulletins ("TSBs") to address complaints of excessive oil consumption and other problems related to the N63 engine.1 TSBs are recommended repairs issued by automotive manufacturers and directed only to automotive dealers. TSBs are frequently issued when a manufacturer receives widespread reports of a particular problem within their vehicles.

43. With regard to the oil consumption issue, Defendants issued the following TSBs:
· NHTSA ID Number: 10046859

Service Bulletin Number: SIB-11-08-12

1 The BMW TSB numbers that are related to the allegations in this Complaint include, but are not limited to, SIB-11-08-12, SIB-11-07-12, and SB B61 30 14. Summary: DUE TO DAMAGED SEAL RING, DURING ASSEMBLY, ENGINE OIL IS LEAKING FROM ENGINE OIL PUMP VOLUME CONTROL VALVE GASKET SEAL RING. MODELS E70, E71, F01, F02, F04, F07, F10, F12, F13. NO MODEL YEARS LISTED.

· NHTSA ID Number: 10045282

Service Bulletin Number: SIB-11-07-12

Summary: BMW: WHILE DRIVING VEHICLE, AT
TIMES WOULD BE ROUGH RUNNING; WHITE OR BLUE SMOKE SEEN EXITING
EXHAUST SYSTEM AND THE ENGINE OIL IS CONSUMED ABOVE
SPECIFICATIONS. _____

· Service Bulletin Number: SIB-11-03-13

Summary: All engines normally consume a certain amount
of engine oil. This is necessary in order to properly lubricate the cylinder walls, pistons, piston
rings, valves and turbocharger(s), if equipped. In addition, engines with less than 6,000 miles will
generally consume additional engine oil because the internal engine components are not fully
seated (break-in). Therefore, engine oil consumption complaints received prior to 6,000 miles
cannot be considered.

Once a new or remanufactured engine has accumulated 6,000 miles, oil consumption can be
considered if there is a drastic change in the engine oil consumption rate (e.g., the engine oil
consumption rate triples) under similar driving conditions.

Engines equipped with a turbocharger(s) will consume more engine oil than normally aspirated
engines (non- turbocharged). The additional oil that is consumed in a turbocharged engine is
mainly due to the turbocharger lubrication requirements. Some of the engine oil normally
migrates past the turbocharger turbine bearing seals and will enter the intake tract of the engine.
All turbocharged engines also require a complex crankcase ventilation system. The crankcase
ventilation system needs to maintain a small vacuum on the crankcase and not allow the
crankcase to be pressurized. Pressurizing the engine crankcase can lead to external engine oil
leaks and increased engine oil consumption via the piston rings and valve seals. When the load
and the boost level of a turbocharged engine is varied, the path of the crankcase pressure is
changed. During the crankcase ventilation path transition, a small amount of engine oil will pass
through the crankcase ventilation system and is additionally consumed. The additional engine oil

consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal
and not a defect.

Oil Consumption specification:

- All BMW engines (excluding Motorsport) can consume up to 1 quart of engine oil per 750
miles at any time.

- Due to the increased engine power, all Motorsport engines can consume up to 2.5 quarts of
engine oil per 1,000 miles at any time.

Turbocharged Engines:

Engines that are fitted with a turbocharger(s) will consume more engine oil than naturally aspirated engines (non-turbocharged engines). In this case, a turbocharged engine could require topping of engine oil more frequently. For vehicles with N63 and N63T engines, refer to SI B11 01 13 for additional details.

44. Defendants included every conceivable driving situation within this Service Information Bulletin as a factor for oil consumption so as to minimize their own responsibility and/or deflect blame onto consumers for the Oil Consumption Defect. As can be seen from the TSBs, Defendants continued to misrepresent to their customers that the rate of oil consumption in the N63 engines was normal and to be expected in engines that are fitted with turbochargers.

45. Defendants made these representations notwithstanding that the stated recommended oil service interval at the time they sold the vehicle was 15,000 miles/two years. Of course, at the rate of oil consumption referred to in the service bulletin, the vehicles would burn through 20 quarts of oil between the recommended 15,000 mile oil service intervals. Clearly, there is nothing normal or expected about this rate of oil consumption.

46. Finally, in December 2014, Defendants conceded as much when they issued Service Bulletin B001314, which they dubbed the "N63 Customer Care Package." This bulletin, which is apparently neither published nor shared with either NHTSA or the consumers, has drastically changed the requirements for oil service changes, from the initial two-year/15,000 mile interval which was represented to consumers on the Owner's Manuals and Warranty and Maintenance Booklet, to one-year/10,000 miles. This bulletin identifies the following vehicles affected:

F01 and F02 (7 Series Sedan) – produced from 3/2009 to 6/2012 F04 (Active Hybrid 7) – produced from 4/2010 to 6/2012

F07 (Gran Turismo) – produced from 9/2009 to 6/2012

F10 (5 Series Sedan) – produced from 3/2010 to 7/2013

F12 (6 Series Convertible) – produced from 3/2011 to 7/2012 F13 (6 Series Coupe) – produced from 7/2011 to 7/2012

E70 (X5) – produced from 3/2010 to 6/2013

E71 (X6) – produced from 7/2008 to 6/2014

E72 (ActiveHybrid X6) – produced from 9/2009 to 9/2011

47. Thousands of purchasers and lessees of the class vehicles have experienced the Oil Consumption Defect. Complaints filed by consumers with the National Highway Traffic Safety

Administration ("NHTSA") and posted on the Internet demonstrate that the defect is widespread (note that spelling and grammatical errors are as found in the original postings):

· NHTSA ID Number: 10678748 Date Complaint Filed: 01/25/2015 Vehicle: 2011 BMW 550I
Summary:
HAVE TO ADD OIL EVEY 500 MILES, AND I DID NOTICE THERES [sic] A RECALL ON THE CAR BUT BMW DOES NOT WANT TO CALL IT A RECALL. I THINK TI [sic] MAY EFFECT CAR 5 YEARS FROM NOW.

---

H0047935.

14

·

NHTSA ID Number: 10691781
Date Complaint Filed: March 3, 2015 Vehicle: 2012 BMW X6

Summary:
VEHICLE HAS BEEN SMOKING, BURNING OIL AND LEAVING A BLACK RESIDUE ON TAIL PIPES AND ON PAINT AROUND TAILPIPES SINCE APPROXIMATELY 6 MONTHS OLD. BMW SERVICE ADVISED OIL USAGE WAS NORMAL FOR VEHICLE AND REFUSED TO INVESTIGATE FURTHER. OIL CONSUMPTION HAS CONTINUED TO INCREASE TO AS MUCH AS 6 QUARTS IN LESS THAN 5,000 MILES. HAVING SERIOUS ENGINE MALFUNCTIONS WITH ENGINE SHUT DOWN, WITHOUT WARNING AND WITHOUT ABILITY TO COMPENSATE FOR TRAFFIC

CONDITIONS. BELIEVE THERE IS AN INHERENT DEFECT IN THE ENGINE AND THAT CAR IS A DANGER. BMW SERVICE SIMPLY CHECKS FOR VISIBLE OIL LEAKS BUT REFUSES TO INVESTIGATE FURTHER.

---

· NHTSA ID Number: 10692476
Date Complaint Filed: March 9, 2015 Vehicle: 2012 BMW 750LI Summary:
CONSUMER WRITES IN REGARDS TO HIGH OIL CONSUMPTION. *SMD THE CONSUMER STATED HE HAD TO ADD OIL FREQUENTLY.

---

· NHTSA ID Number: 10534669
Date Complaint Filed: August 10, 2013

Vehicle: 2013 BMW 550I

Summary:

ENGINE CONTINUES TO BURN THROUGH OIL APPROXIMATELY EVERY 1,500 MILES, WHICH COULD LEAVE THE VEHICLE STRANDED AND INOPERABLE. IT'S UNACCEPTABLE IN A BRAND NEW VEHICLE.

---

· Online Complaint

Date of Complaint: May 21, 2013 Vehicle: 2013 BMW 750 Summary:

I got a new 2013 750 this last February and I am having problems with the oil levels.

I drove the car for 2,700 and I got a indicator that the oil levels were low.

I went to the dealer and put 1 QT of oil. After 20 days I got it again at 3700 miles.

I went to the dealer and put another QT and measured the level, it was a the top.

Two days later, I re-measure the level and now is at the mid level.

No response from the dealer with a logical answer, same from BMW HQ, just phone talk and no real answers.

48. Despite their knowledge of the Oil Consumption Defect, when owners or lessees of the vehicles specifically complain to Defendants about the Oil Consumption Defect, Defendants' policy is to first deny that there is a known problem and to assert that losing abnormally high amount of oil is just normal.

B. The Battery Defect Within the Class Vehicles

49. Plaintiffs were informed and believes, and based thereon alleges that defects in the N63 are also responsible for the premature wear of the engine battery, resulting in the need to replace the battery as often as every 10,000 or one year, well before the useful life of an automotive battery (the "Battery Defect").

50. The premature wear is the result of excessive energy demands placed on the battery by the N63 engine's cooling system components. Despite knowledge of the N63's increased energy demands, Defendants failed to incorporate in their initial design a power source that could adequately provide for the N63's energy demands, instead providing an insufficient 90 Ah battery as original equipment.

51. Defendants first acknowledged this defect when they issued Technical Service Bulletin SI B61 30 14 in December 2014. This TSB provided in pertinent part:

Vehicles with N63 engines require additional cooling capacity, and the activation of the various cooling system components places additional demands on the battery.

Several enhancements have been made to the power management system on such vehicles. However, in a quest to ensure total customer satisfaction, please replace the 12-volt battery on a preventive maintenance basis at every engine oil service (engine oil service counter # 1, # 2, # 3, etc.), unless the battery was replaced within the last 12 months.

... .

### VEHICLES EQUIPPED WITH AN N63 ENGINE ONLY

This procedure only pertains to the models and production ranges listed above that are equipped with an N63 engine.

At every engine oil service covered under the 4 year/50,000 miles BMW Maintenance Program:

1. Perform a Key Read on the vehicle and check to see if an engine oil service is "Recommended" or "Due" by miles or will be required in the next 60 days or less.

2. Confirm the battery was not replaced previously during the last 12 months.

3. If the conditions described in steps 1 and 2 are satisfied, replace the battery simultaneously with the performance of the engine oil service.

Important note: Do not perform an energy diagnosis for this battery replacement.

4. Replace the battery with a 105 Ah battery (this is an upgrade from the originally fitted 90 Ah battery).

52. Significantly, though acknowledging the significant energy demands of the N63's cooling system, Defendants have taken no steps to provide a remedy for the Plaintiffs vehicle once the Certified Pre Owned Warranty expires.

53. Upon expiration of the Certified Pre Owned Warranty period, Plaintiffs will be forced to replace their vehicle's battery as often as once a year or 10,000 miles, at a significant expense.

54. Plaintiffs allege, based on information and belief, that Defendants were aware of the defect in the N63 engine resulting in abnormally high oil consumption and premature battery wear long before Plaintiffs purchased their vehicle and before the issuance of their technical service bulletins addressing these issues, through sources not available to Plaintiffs, including but not limited to pre-release testing data, early consumer complaints about premature battery failure to Defendants and their dealers, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for each vehicle, and from other internal sources.

55. Customers have reported the Oil Consumption Defect and Battery Defect in the Class Vehicles to Defendants directly and through their dealers. Defendants are fully aware of the Oil Consumption and Bbattery Defects contained in the vehicle. Despite this, Defendants have failed to disclose and has actively concealed the existence and nature of the defects from Plaintiffs at the time of purchase or lease and thereafter. Specifically, Defendants have:

(a) failed to disclose, at and after the time of purchase and thereafter, any and all known material defects or material nonconformities of the vehicle, including the Oil Consumption and Battery Defects and, among others, the frequent supplemental oil costs between regularly scheduled oil changes and frequent need to replace the battery;

(b) failed to disclose at the time of purchase that the vehicle and their engines were not in good working order, were defective, and were not fit for their intended purpose; and

(c) failed to disclose or actively concealed the fact that the vehicle and its engine were defective as a result of the Oil Consumption and Battery Defects, despite the fact that Defendants knew or should have known of such defects prior to the first vehicle being sold.

56. Defendants provide with the purchase of their certified pre owned vehicles a Certified Pre Owned Warranty that provides that "upon discovery of a defect in material or workmanship . . .

[an] authorized BMW center will, without charge for parts or labor, either repair or replace the defective part(s)" for a period of " 36 months or 100,000 miles, whichever occurs first."

57. Nevertheless, Defendants have caused Plaintiffs to expend money at their dealerships and service centers and/or take other remedial measures related to the Oil Consumption and Battery Defects in the vehicle such as carrying containers of oil with them at all times.

58. Defendants have not recalled the vehicle to repair the defective engines and their Oil Consumption and Battery Defects, and have not offered to reimburse the vehicle owners who incurred costs relating to oil consumption, battery, and related problems.

59. Plaintiffs are reasonable consumers and do not expect their vehicles to require the addition of several quarts of oil between regularly scheduled oil changes.

60. Plaintiffs expect and assume that Defendants will not sell vehicles with known defects, such as the Oil Consumption and Battery Defects, and will disclose any such defects to their

consumers before they purchase the vehicle. They do not expect Defendants to fail to disclose the Oil Consumption and Battery Defects to them, or to continually deny the defect.

61. Consequently, Plaintiffs have not received the value for which they bargained when they purchased the vehicle.

62. As a result of the Oil Consumption and Battery Defects, the value of the vehicle has diminished, including, without limitation, the resale value of the vehicle.

## TOLLING OF THE STATUTE OF LIMITATIONS

63. Any applicable statute of limitation has been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein. Plaintiffs could not have reasonably discovered the true, defective nature of the proposed vehicle until shortly before this litigation commenced. Defendants are further estopped from relying on any statute of limitation because of their concealment of the defective nature of the vehicle and their engine. Motor oil functions as an essential lubricant for the moving parts in internal combustion engines. The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear. Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. As a result, the Class Vehicles need the proper amount of engine oil in order for the engine and its related parts to function safely.

## THE COURT SHOULD APPLY NEW JERSEY LAW

64. The substantive laws of New Jersey should apply to the proposed, as defined herein, because Plaintiffs properly bring this Complaint in this District.

65. New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

66. Specifically, Defendant's North American headquarters and principal place of business is located in New Jersey. According to its website, Defendant's Corporate Headquarters is located in Woodcliff Lake, New Jersey, its Eastern Regional Headquarters and Technical Training Center is located in Woodcliff Lake, New Jersey, and a Vehicle Preparation Center is in Port Jersey, New Jersey.

67. Defendant BMW NA owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendant BMW NA's conduct

under its laws. Defendant BMW NA's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

68. A substantial amount of service was done on the vehicle in the state of New Jersey.

69. Upon information and belief, Defendant's misconduct emanated from New Jersey. This conduct similarly injured the Plaintiffs residing in the United States. For instance, Defendant's marketing and advertising efforts were likely created in and orchestrated from the location of Defendant's present headquarters in New Jersey. As a result, New Jersey is the locus where the conduct causing injury to the Plaintiffs occurred and emanated.

70. The application of New Jersey's laws are also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and New Jersey has a greater interest in applying its laws here than any other interested state.

CAUSES OF ACTION COUNT 1

VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. Stat Ann. §56:8-1,etseq.)

71. Plaintiffs incorporate by reference each preceding and succeeding paragraph as those fully set forth at length herein.

72. Plaintiffs have in fact suffered injury and have lost money and property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA").

73. The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

74. Plaintiffs are consumers who purchased vehicle for personal, family or household use.

75. Defendants engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations and false statements regarding the vehicle in the course of Defendants' business. Specifically, Defendants knew or should have known that the vehicle suffered from an

excessive Oil Consumption Defect that required supplemental addition of oil in quantities as high as one quart every 750 miles and required replacement of the battery as frequently as every 10,000 miles or one year. Defendants also knew or should have known that the vehicle suffered from a Battery Defect that required the frequent replacement of the battery, as often as every one year or 10,000 miles. However, Defendants failed to disclose this defect to Plaintiffs at the time of purchase.

76. Defendants have also engaged in unlawful conduct by willfully and knowingly suppressing and/or omitting information related to the vehicle to consumers. Specifically, Defendants purposefully and knowingly failed to disclose the Oil Consumption and Battery Defects in the vehicle to consumers such as Plaintiffs and in order to secure the sale at a premium price. Defendants also failed to disclose the Oil Consumption and Battery Defects during the limited warranty period to avoid having to perform their contractual duties under the warranty to repair all known defects.

77. Defendants did not fully and truthfully disclose to their customers the true nature of the Oil Consumption and Battery Defect in the vehicle, said defects not being readily discoverable at the time of purchase.

78. Defendants intended that Plaintiffs rely on their misrepresentation and/or acts of concealment and omission, so that they would purchase the vehicle.

79. Accordingly, Defendants have engaged in unfair and deceptive trade practices, including representing that the vehicle have characteristics, uses, benefits, and qualities which they do not have; representing that the vehicle is of a particular standard and quality when they are not; advertising the vehicle with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Defendants' acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Defendants fraudulently concealed the defective nature of the vehicle from consumers.

80. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

81. By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJCFA.

82. Defendants' conduct caused Plaintiffs to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs have suffered an ascertainable loss in that they received less than what

was promised to them by Defendants at the time they purchased the vehicle. Plaintiffs have also had to expend time and resources in order to bring their vehicle in for service when the check engine oil light was activated, and will suffer future damages due to the loss in value of the vehicles as a result of the Oil Consumption and Battery Defects. Therefore, Plaintiffs are entitled to recover such damages, together with appropriate penalties, including treble damages, and costs of suit.

83. A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs. Had the defective vehicle design in the vehicle been disclosed, Plaintiffs would not have purchased them or would have paid less for the vehicle had they decided to purchase it.

84. Plaintiffs has suffered an ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 are entitled to threefold damages.

85. Unless Defendants are enjoined from continuing to engage in this business practice, Plaintiffs will continue to be injured by Defendants' wrongful actions and conduct. Therefore, Plaintiffs are entitled to injunctive relief.

86. Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

COUNT II

BREACH OF EXPRESS WARRANTY

87. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88 Plaintiffs bring this claim on their behalf.

89. Defendants expressly warranted that the vehicle were of high quality and, at minimum, would actually work properly. Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the certified pre-owned ("CPO") warranty periods.

90. Plaintiffs relied on Defendants' express warranties when purchasing their vehicle.

91. Defendants breached this warranty by selling to Plaintiffs with known engine oil consumption and battery problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly.

92. As a result of Defendants' actions, Plaintiffs have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicle, and other related damage.

93. Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

94. The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Plaintiffs, and Defendants knew or should have known that the vehicle was defective at the time of sale and would fail well before its useful life.

95. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

COUNT III
BREACH OF IMPLIED WARRANTY

96. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97. Plaintiffs brings this claim on their behalf.

98. BMW is a "merchant" as defined under the Uniform Commercial Code ("UCC"). 107. The vehicle is defined as "goods" under the UCC.

99. Defendants impliedly warranted that the vehicles were of a merchantable quality.

100. Defendants breached the implied warranty of merchantability, as the vehicle was not of a merchantable quality due to the Oil Consumption and Battery Defects.

101. As a direct and proximate result of the breach of said warranties, Plaintiffs were injured, and are entitled to damages.

102. Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

103. The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs. Defendants knew or should have known that the vehicle were defective at the time of sale and would fail well before their useful lives.

104. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT IV
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR

### DEALING

105. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

106. Plaintiffs bring this claim on their behalf.

107. Every contract in New Jersey contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

108. Plaintiffs have complied with and performed all conditions of the purchase contract.

109. Defendants breached the covenant of good faith and fair dealing by, inter alia, failing to notify Plaintiffs of the Oil Consumption and Battery Defects in the Class Vehicles, and failing to fully and properly repair this defect.

110. Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

COUNT V
VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

111. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112. Plaintiffs brings this action on their behalf.

113. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

114. BMW is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

115. The vehicle is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

116. Defendants' express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The vehicle implied warranties are covered under 15 U.S.C. § 2301(7).

117. Defendants breached these warranties as described above. Without limitation, the vehicle contain the Oil Consumption and Battery Defects. The vehicle share a common design defect in that the N63 engines fail to operate as represented by Defendant.

118. Plaintiffs relied on the existence and length of the express warranty in deciding to purchase their vehicle.

119. Plaintiffs have had sufficient direct dealings with either Defendants or their agents (dealerships, technical support and service stations) to establish privity of contract between Defendants, on one hand, and Plaintiffs, on the other hand. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the vehicle and have no rights under the warranty agreements provided with the vehicle; the warranty agreements were designed for and intended to benefit the consumers only.

120. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs have already done so, and Defendants have failed, after numerous attempts, to cure the defects. At the time of sale of the vehicle, Defendants knew, should have known, or were reckless in not knowing of their

misrepresentations and omissions concerning the vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

121. Plaintiffs would suffer economic hardship if they returned their vehicle but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their vehicle by retaining them.

122. Defendants have been afforded a reasonable opportunity to cure their breach of written warranty and/or Plaintiffs were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranty would have been futile. Defendants were also on notice of the alleged defect from the complaints and service request they received from Plaintiffs, as well as from their own warranty data.

123. Defendants' breach of the express warranty has deprived the Plaintiffs of the benefit of their bargain.

124. The amount in controversy of the Plaintiff's individual claims meet or exceeds the sum or value of $250,000.00. In addition, the amount in controversy meets or exceeds the sum or value of $100,000.00 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

125. As a direct and proximate cause of Defendants' breach of written warranty, Plaintiffs sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, and/or other relief as appropriate.

COUNT VI
Conn. Gen. Stat. § 42-110a through 42-110q

Connecticut Unfair Trade Practices Act

126. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127. Plaintiffs bring this claim on behalf of herself and on their behalf.

128. Connecticut's Unfair Trade Practices Act §§ 42-110a, 42-110b(a), 42-110b the state UDAP statute broadly prohibits unfair or deceptive acts or practices "in the conduct of ant trade or commerce". Conn. Gen. Stat § 42-110a.

129. The vehicle is defined as the "trade" and "commerce".

130. BMW is the "person" as that term is defined in Conn. Gen. Stat. 42-110a.

131. Plaintiffs are "consumers" as defined in Conn. Gen. Stat 42-110a.

132. Plaintiff's purchase of the vehicle constitute "trade" and "commcerce" as defined in Conn. Gen. Stat 42-110a.

133. As alleged above, Defendants made numerous representations concerning the vehicle that were misleading.

134 The acts and practices of Defendants as discussed throughout the Complaint,
constitute "unfair or deceptive acts or practices" by Defendants, that are unlawful, as enumerated in title 42- business, selling, trading and collection practices chapter 735a-unfair trade practices, section 42-110a-definitions.
No person shall engage in unfair methods of competition and unfair or deceptive acts of practices in the donut of any trade or commerce.
1 Misrepresenting the source, sponsorship, approval or certification of goods or services;
2 Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
3 Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
4 Advertising goods and services with the intent not to sell them as advertised.

135. Plaintiffs have suffered injury in fact resulting from Defendants' material omissions and misrepresentations because they paid an inflated purchase price for the vehicle.

136. Defendants knew, should have known, or was reckless in not knowing that the vehicle contained a defect that caused them to consume oil at an abnormally and unreasonably high rate and that caused premature wear of the vehicles' batteries. As a result, Defendants knowingly and intentionally sold goods that were not of the value or quality that was represented.

137. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

138. Defendants knew that their vehicles and their engines were defectively designed or manufactured, would fail prematurely, would consume excessive oil, require frequent battery replacement, and were not suitable for their intended use.

139. Defendants were under a duty to Plaintiffs to disclose the defective nature of the vehicle and the Oil Consumption and Battery Defects because:

a. Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the vehicle and its engine;

b. Plaintiffs could not reasonably have been expected to learn or discover that the vehicle and its engine had a dangerous safety defect until manifestation of the defect; and

c. Defendants knew that Plaintiffs could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect.

140. In failing to disclose the Oil Consumption and Battery Defects and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

141. The facts concealed or not disclosed by Defendants to Plaintiffs are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' vehicle or pay a lesser price. Had Plaintiffs known about the defective nature of the vehicle and its engine, they would not have purchased the vehicle or would have paid less for it.

142. The facts concealed and omitted by Defendants to Plaintiffs are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or pay a lower price. Had Plaintiffs known about the Oil Consumption and Battery Defects contained in the vehicle, they would not have purchased or would not have paid the prices they paid.

143. Such misconduct materially affected the purchasing decisions of Plaintiffs.

144. The injuries suffered by Plaintiffs were proximately caused by Defendant's fraudulent and deceptive business practices.

145. Plaintiffs are entitled to injunctive relief.

146. Plaintiffs have provided Defendants with notice of the violations. If, within 30 days of the date of this written notice, Defendants fail to provide appropriate relief for their violation of the CLRA, Plaintiffs will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive relief now being sought, under Connecticut state law.

COUNT VII
NEW JERSEY UNFAIR TRADE PRACTICES

BREACH OF EXPRESS WARRANTY, BREACH OF IMPLIED WARRANTY AND
DECEPTIVE ADVERTISING

(NJ Rev Stat § 56:8-2 (2015)

147. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

148. Plaintiffs bring this count on their behalf.

149. BMW assembled and places the vehicle into the stream of commerce with the intent that the be purchased by the Plaintiffs.

150. In the Certified Pre Owned Warranty, BMW expressly warranted the vehicle (against defects in materials of workmanship) when first sold to retail purchasers.

151. BMW also expressly warranted that it would repair or replace the defective vehicle at no cost to the owner if it receives notice of vehicle defects within 34 months or 100,000 miles after the first retail sale.

152.Pursuant to the BMW maintenance program, BMW also expressly warranted that it would (cover all factory- recommended maintenance, as determined by the condition based services system (CBS).

153. The terms of BMW's CPO warranty and the BMW maintenance program became part of the basis of the bargain between Plaintiffs when deciding to purchase the vehicle.

154. Plaintiffs, including second hand owners who did not purchase the vehicles from BMW authorized dealerships, are express, intended third-party beneficiaries of BMW's CPO limited warranty because it explicitly extends to (the first retail purchaser, and each subsequent purchaser).

155. BMW breached its CPO limited warranty with respect to the vehicle, (1) each time it sold the vehicle in a defective state to first retail purchasers; (2) each time its authorized services representatives failed to properly repair, replace, or adjust the malfunctioning vehicle to a non-defective state; and (3) each time it failed to authorize its service representatives to perform adequate repairs on the vehicle and instead instructed its representatives to perform temporary, inadequate repairs to mask the underlying defects until after the expiration of the CPO limited warranty.

156. BMW breached its BMW maintenance program by refusing to cover the cost of the additional quarts of engine oil required by the vehicle CBS systems to be added in between oil changes.

157. As a result of the oil consumption defect, the vehicle was defective and did not adhere to the CPO limited warranty when first sold and have not been remedied as originally warranted since the time of sale.

158. By breaching its express warranty, BMW has caused and continues to cause these warranties to fail of their essential purpose.

159. Defendants attempt to disclaim or limit these express warranties vis-a-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, defendants warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

160. The time limits contained in the defendants warranty period were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored defendants. A gross disparity in bargaining power existed between Defendants and the Plaintiffs, and the defendants knew or should have known that the vehicle was defective at the time of sale and would fail well before its useful life.

161. BMW has been given a reasonable opportunity to cure its breach of the CPO limited warranty and/or Plaintiffs were not required to do so because such an opportunity would be futile. BMW has known about the oil consumption defects since at least 2008 and failed to repair or replace the vehicle as it originally warranted.

162. As a direct and proximate result of BMWs breach of the Certified Pre Owned limited warranty and the BMW maintenance program, Plaintiffs have suffered damages in an amount to be determined at trial.

163. Plaintiffs individually seek all damaged permitted by law, including compensation for monetary difference between the vehicle as warranted as sold; compensation for the reduction in resale value; compensation for out of pocket repairs and service; towing charged incurred as a result of the vehicle breakdown; the cost of purchasing the vehicle along with all other incidental and consequential damages, statutory damages and all other relief allowed by law.

## COUNT VIII FRAUD BY OMISSION

164. Plaintiffs incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

165. Plaintiffs brings this Count on their behalf.

166. Defendants intentionally and knowingly concealed, suppressed and/or admitted material facts including the standard, quality or grade of the vehicle and the fact that the engine installed in the vehicle suffered from the oil consumption defect, exposing drivers, occupants and members of the public to safety risks with the intent, that Plaintiffs rely on Defendants misrepresentations and omissions. As a direct result of Defendants fraudulent conduct, Plaintiffs have suffered actual damages.

167. Plaintiffs would not have purchased the vehicle but for Defendants omissions and concealment of material facts regarding the nature and quality of the vehicle and the existence of the oil consumption defect or would have paid less for the vehicle.

168. Defendants had a duty to disclose the oil consumption defect because it can cause engine failure while the vehicle is in operation at any time and under any driving conditions or speeds,

thereby exposing the vehicles drivers, their passengers, and others who share the road with them to serious risk of accidents and injury.

169. Defendants also had a duty to disclose the oil consumption defect as a result of partial representations made in the owners manual and the CPO limited warranty period. The owners manual describes the "BMW Maintenance Program" which "covers all factory/ recommended maintenance". However, that program excludes from coverage "toping off low fluids (e.g., engine oil...)" and "oil changes performed outside the recommended maintenance intervals...". Those partial re presentations do not disclose the oil consumption defect and thus create a reasonable belief that the amount of oil that the vehicle consumes is comparable to other vehicles. The owner manual also contains a "maintenance service summary" that specifically addresses replacing engine oil. The summary identifies recommended replacement oil and various air and fuel filters that should be replaced after every second, fourth and fifth engine oil service. The manual does not disclose that the maintenance instructions may be impacted by the oil consumption defect.

170. Plaintiffs relied upon material omissions of employees and agents of defendants at the time of purchase and material omission in the owners manuals concerning the oil consumption defect.

171. Defendants knew their concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the oil consumption defect would sell more vehicles and discourage Plaintiffs from seeking replacement or repair of the engines, thereby increasing profits.

172. Defendants acted with malice, oppression and fraud.

173. Plaintiffs reasonably relied upon defendants knowing, affirmative and active concealment and omissions. As a direct and proximate result of defendants omissions and active concealment of material facts regarding the oil consumption defects, Plaintiffs suffered actual damages in an amount to be decided at trial.

## COUNT IX UNJUST ENRICHMENT

174. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

175. Plaintiffs bring this cause of action against Defendants on their behalf.
176. This claim is pled in the alternative to the other legal claims alleged in the complaint.

177. Plaintiffs conferred a benefit on defendants by selling the vehicle. Defendants were and should have been reasonably expected to provide the vehicle free from the oil consumption defect.

178. Defendants unjustly profited from the sale of the vehicle at inflated prices as a result of their false representations, omissions and concealment of the oil consumption defect in the vehicle. Defendants benefited, at Plaintiffs expense, when they sold the vehicle that were inferior to the vehicle Plaintiffs thought they were purchasing, yet the price they paid was the price for a supposedly better functioning vehicle they thought they were purchasing. Defendants also unjustly profited from refusing to cover the cost of additional engine oil under the BMW Maintenance Program.

179. As an approximate result of Defendants false representations, omissions and concealment of the oil consumption defect in the vehicle, and as a result of Defendants ill- gotten gains, profits, defendants have been unjustly enriched at the expense of the Plaintiffs. It would be inequitable for defendants to retain their ill-gotte profits without paying the value thereof to Plaintiffs.

180. There is a direct relationship between defendants on the one hand, and Plaintiffs on the other, sufficient to support a claim for unjust enrichment. Defendants, acting in concert, failed to disclose the oil consumption defects to improve retail sales, which in turn improved whole sales. Conversely, defendants knew that disclosure of the oil consumption defect would suppress retail and wholesale sales of the vehicle, surpassed financing of the vehicle, and would negatively impact the reputation of defendants brand among plaintiffs. Defendants also knew their concealment and suppression of the oil consumption defect would discourage Plaintiffs from seeking replacement or repair of the engines, thereby, increasing profits and/or avoiding the cost of such replacement and repairs.

181. Plaintiffs are entitled to restitution in the amount of defendants ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

182. Plaintiffs seek and order requiring defendants to disgorge their gains and profits to Plaintiffs, together with interest, in a manner to be determined by the court.

X

Title 2c- The New Jersey Code of Criminal Justice

(2c:33-4(b) - Harassment)

183. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

184 Plaintiffs bring this count on their behalf.

185. Defendant David Bergomatto followed and continued to annoy and harass Plaintiffs as they were attempting to get into their vehicle and leave BMW of Park Ave service center to head to work.

186. The defendant stood behind the Plaintiffs car and would not allow her to continue her daily routine.

XI

Title 2c- The New Jersey Code of Criminal Justice

(2c:33-2(2)(b)- Disorderly Conduct)

187. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

188. Plaintiffs bring this count on their behalf.

189. Defendant David Bergamotto continued to stand behind Plaintiff's vehicle which caused a hazardous and dangerous condition.

XII

Title 2c The New Jersey Code of Criminal Justice

(2c:13-3-) False Imprisonment

190. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

191. Plaintiffs bring this count on their behalf.

192. Plaintiffs were unlawfully restrained so that they were not able leave at their own liberty.

## XIII

Title 2c The New Jersey Code of Criminal Justice

(2c:28-4(b)(1)(2) False report to Law Enforcement

193. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

194. Plaintiffs bring this count on their behalf.

195. Defendant David Bergamotto stood behind Plaintiff's vehicle and proceeded to call the local authorities and falsely made a report to the police that Plaintiffs were trespassing and that he wanted Plaintiffs off of private property.

## XIV

Title 2C- New Jersey Code of Criminal Justice

(2c:28-3(a)(b)(1)(2)(3)(4)Unsworn falsification to authorities

196. Plaintiffs incorporate by reference all allegations contained in this complaint as though fully set forth herein.

197. Plaintiffs bring this count on their behalf.

198. Defendant David Bergamotto has brought up three counts and charges on Plaintiff Nicholas Taylor; 1) 2C:18-3B, 2) 2C:33-4A, 3) 2C:33-2A(1) which were falsified and only submitted in retaliation to Plaintiff's initial complaints.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves, respectfully request that this court enter judgement against defendants and in favor or Plaintiffs, award the following relief.

1. An order awarding declaratory relief and enjoining defendants from continuing unlawful, deceptive, fraudulent, harmful, and unfair business, conduct and practices alleged herein.

2. Injunctive and equitable relief in the form of comprehensive program to repair the oil consumption defect, and/or buy back the vehicle and to fully reimburse and make whole for all costs and economic losses.

3. A declaration that defendants are financially responsible for all relief.

4. An order awarding costs, restitution, disgorgement, punitive damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss and out of pocket costs in an amount to be determined at trial.

5. An order awarding any applicable statutory and civil penalties;

6. An order requiring defendants to pay both pre- and post- judgment interest on any amounts awarded;

7. Such other or further relief as the court may deem appropriate, just, equitable.
   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil procedure 38B, Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

*Nicholas Taylor*

Dated: February 20th , 2020.

Respectfully submitted,

Christine hammond & Nicholas Taylor 56 Genessee avenue Paterson New Jersey, 07503

Telephone (347 217-6388)
Email: nicholasataylor68@gmail.com

chammond964@gmail.com Plaintiff's

| Dates | Complaint | Counts |
| --- | --- | --- |
| 10-Jan-17 | Oil Consumption and Rims & Tires | I-IX |
| 15-Mar-17 | Oil Consumption and Rims & Tires | I-IX |
| 18-Apr-17 | Oil Consumption, Rims & Tires and Battery | I-IX |
| 23-May-17 | Oil Consumption, Battery & Rims & Tires | I-IX |
| 16-Jun-17 | Engine Malfunction, Battery and Rims & Tires | I-IX |
| 24-Jul-17 | Engine Malfunction, Battery and Oil Consumption | I-IX |
| 16-Aug-17 | Engine Malfunction, Oil Consumption and Rims & Tires | I-IX |
| 6-Sep-17 | Engine Malfunction/Leak, Oil Consumption and Rims & Tires | I-IX |
| 17-Oct-17 | Low washer fluid, Low engine oil and Rims & Tires | I-IX |
| 21-Nov-17 | Oil Consumption and Rims & Tires | I-IX |
| 20-Dec-17 | Oil Consumption, Battery & Rims & Tires | I-IX |
| 18-Jan-18 | Rims and Tires | I-IX |
| 24-Jan-18 | Rims & Tires | I-IX |
| 23-Feb-18 | Rims & Tires | I-IX |
| 13-Apr-18 | Oil Consumption and Rims & Tires | I-IX |
| 26-Apr-18 | Rims & Tires | I-IX |
| 22-May-18 | Oil Consumption/Leak and Rims & Tires | I-IX |
| 31-May-18 | Rims & Tires | I-IX |
| 6-Jul-18 | Rims & Tires - Small Claims Settlement | I-IX |
| 18-Jul-18 | Battery | I-IX |
| 16-Aug-18 | Third USB charging port complaint | I-IX |
| 7-Sep-18 | Engine malfunction, Oil Consumption and Battery | I-IX |
| 21-Sep-18 | Engine malfunction, Oil Consumption and Battery | I-IX |
| 10-Oct-18 | Rims & Tires | I-IX |
| 23-Oct-18 | Rims & Tires | I-IX |
| 6-Dec-18 | Rims & Tires, Oil Consumption and Engine Malfunction | I-IX |
| 26-Dec-18 | Engine Malfunction, Oil Consumption, Battery and Rims & Tires | I-IX |
| 31-Dec-18 | Engine malfunction, Oil Consumption and Battery | I-IX |
| 8-Jan-19 | Engine Malfunction, Oil Consumption and Battery | I-IX |
| 8- Feb-19 | Engine Malfunction, Oil Consumption, Battery | I-IX |
| 4-Mar-19 | Rims & Tires | I-IX |
| 10-May-19 | Engine Malfunction, Oil Consumption, Battery and Rims & Tires | I-IX |

| Date | Description | |
|---|---|---|
| 21-May-19 | Engine Malfunction, Oil Consumption and Battery | I-IX |
| 29-Jun-19 | Rims & Tires, Engine Malfunction and Oil Consumption | I-IX |
| 13 - Jul-19 | Engine Malfunction and Oil Consumption | I-IX |
| 19 - Jul-19 | Engine Malfunction and Oil Consumption | I-IX |
| 8-Aug-19 | Engine Malfunction, Oil Consumption and Battery | I-IX |
| 20-Aug-19 | Engine Malfunction, Oil Consumption, Rims & Tires: 2nd speaker complaint | I-IX |
| 23-Aug-19 | Engine Malfunction, Oil Consumption and Rims & Tires | I-IX |
| 26-Aug-19 | Engine Malfunction, Oil Consumption and third speaker complaint | I-IX |
| 6-Sept-19 | Oil Consumption | I-IX |
| 23-Sept-19 | Oil Consumption | I-IX |
| 10-Oct-19 | Oil Consumption | I-IX |
| 18-Oct-19 | Engine Malfunction, Oil Consumption, Battery and Offer for Warranty | I-IX |
| 7-Nov-19 | Denied warranty purchase because Engine Malfunction while at park ave bmw | I-IX |