**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICHOLAS TAYLOR, and CHRISTINE HAMMOND<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>　　　　　Defendants. | Civ. No. 20-1994 (KM)(JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　*Pro se* plaintiffs Christine Hammond and Nicholas Taylor initiated this products liability action against defendants BMW of North America, LLC ("BMW NA"); Bavarian Motor Works AG ("BMW AG")[1]; and David Bergamatto Park Ave BMW ("Bergamatto").[2] Plaintiffs allege that they purchased a defective BMW vehicle that was designed, manufactured, distributed, marketed, and sold by Defendants BMW NA and BMW AG. Plaintiffs also allege that Bergamatto committed various violations of the New Jersey criminal code. Defendants

---

[1]　　Defendant BMW NA understands named defendant "Bavarian Motor Works AG" to mean Bayerische Motoren Werke Aktiengesellchaft, which is the German entity that designs and manufactures BMW brand automobiles. (DE 13-1 at 7 n.1). Defendant BMW NA imports, distributes, and warrants the vehicles that BMW AG designs and manufactures. (*Id.*). For simplicity, references to BMW NA herein should be taken to include BMW AG as necessary.

[2]　　The dealership, Park Avenue BMW, understood itself to be named as the defendant. (*See* DE 7). It appears that plaintiffs may have intended to name an individual, Dave Bergamatto *of* Park Avenue BMW. *See* Proof of Service (DE 9) ("Dave Bergamatto of Park Avenue BMW," served at a South Hackensack, NJ, address associated with the Park Avenue BMW dealership). Alternatively, they may have intended to name Dave Bergamatto *and* Park Ave BMW. I will refer to this defendant as "Bergamatto," but such references should be understood to include the Park Avenue BMW dealership as appropriate.

Bergamatto and BMW NA separately move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. (DE 7, DE 13). *See* Fed. R. Civ. P. 12(b)(1), 12(b)(2).

For the benefit of these *pro se* plaintiffs, I summarize the basis for my decision. The Complaint consists largely of state-law claims; if this federal court is to hear them, some basis for jurisdiction must be demonstrated.

As one basis for this federal court's jurisdiction over state-law claims, the Complaint alleges "minimal diversity"— *i.e.,* that at least one plaintiff is a citizen of a state different from that of at least one defendant. But jurisdiction in an individual action like this one depends on *complete* diversity—*i.e.,* that at the time the action was commenced, no plaintiff and no defendant were citizens of the same state. That is not alleged, and it does not appear to be the case.

The other potential basis for federal jurisdiction would be the existence of a federal question. The Complaint does allege one federal claim under the Magnuson-Moss Warranty Act ("MMWA"), which federalizes certain state-law claims of breach of warranty. As currently alleged, however, that count of the complaint will be dismissed for failure to state a claim. The warranty expired in September 2019, and the Complaint does not allege that BMW NA failed to perform under the warranty during its term; it alleges only a series of service calls in 2017, and a fear that further repairs are likely to be necessary in the future. Because that federal claim has been dismissed, I decline to exercise supplemental jurisdiction over the remaining, state-law claims.

The Defendants may or may not be liable for defects in the automobile on some consumer fraud theory, some amended warranty theory, or some other state-law theory. On these matters, the Court takes no position, because it lacks jurisdiction.

Because this is an initial dismissal, it is entered without prejudice to the submission, within 30 days, of a proposed amended complaint that remedies the deficiencies in the MMWA count. Alternatively, the plaintiffs may elect to file these predominantly state-law claims in state court.

I.      **Summary**[3]

As alleged in the Complaint, Plaintiffs are residents of New York and New Jersey[4] who purchased a certified pre-owned 2013 BMW 750li "equipped with 4.4 liter V-8 turbocharged 'N63' engine" on November 5, 2016. (Compl. ¶¶1, 3, 20). Plaintiffs purchased the vehicle under Defendant's Certified Pre Owned Warranty ("CPO Warranty") from Greenwich BMW, an authorized BMW retailer located in Connecticut.[5] (Compl. ¶¶20-21). Plaintiffs allege that the "vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by BMW." (Compl. ¶20).

Defendant BMW AG is a German corporation with its principal place of business located in Munich. (Compl. ¶27). Plaintiffs allege that BMW AG is the parent corporation of BMW NA, a Delaware corporation with its principal place of business in New Jersey. (Compl. ¶¶27-28). Plaintiffs further allege that BMW NA is the United States sales and marketing division of BMW AG, "which oversees sales and other operations across the United States." (Compl. ¶28). BMW NA distributes "BMW vehicles and sells these vehicles through its network of dealers," which are the agents of BMW NA and BMW AG. (Compl. ¶¶28-29). Plaintiffs further allege that there is "a unity of ownership" between BMW NA and BMW AG, and their agents, "such that any individuality or separateness between them has ceased and each is the alter ego of the others." (Compl. ¶30).

The Complaint alleges two defects that plagued Plaintiff's vehicle. First, Plaintiffs submit that the vehicle contained an "Oil Consumption Defect" in the

---

[3]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint (DE 1)

[4]     The Complaint alleges that Plaintiffs reside in "Yonkers, New York and Paterson, New Jersey." (Compl. ¶1).

[5]     Not the New Jersey dealership, Park Avenue BMW, referred to in connection with defendant Bergamatto.

engine. (Compl. ¶4). On January 10, 2017, "with approximately 22,036 miles on the odometer," Plaintiff visited a BMW service center "for complaints regarding the oil being consumed at an abnormally high rate." (Compl. ¶22). BMW technicians serviced the engine oil under warranty and "recommended that the oil consumption be monitored." (*Id.*). Then, on March 15, 2017, "with 26,482 miles on the odometer, Plaintiffs "returned to the dealership for oil, brake fluid and the car shaking." (Compl. ¶23). On April 18, 2017, Plaintiffs took the vehicle back to the service center, "with 27,928 miles on the odometer," because the "low oil light" had activated. (Compl. ¶24). Plaintiffs allege that they were told to return to the service center "when the oil level light is back on in 1,000 miles" because the vehicle "was consuming an abnormal amount of oil." (*Id.*). Thereafter, Plaintiffs brought the vehicle to the service center on five additional occasions "due to complaints of abnormal oil consumption, engine malfunction and the car shaking." (Compl. ¶25). Plaintiffs submit that, on each visit, they were "advised that the high rate of oil consumption was 'normal.'" (*Id.*).

Plaintiffs allege that Defendants learned of the Oil Consumption Defect as early as 2008 from "pre-release testing data, early consumer complaints . . ., testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates . . ., and from other internal sources." (Compl. ¶40). Further, they allege that "Defendants had a duty to disclose the Oil Consumption Defect and the associated out-of-pocket repair costs to the Plaintiffs because the defect poses an unreasonable safety hazard," and "Defendants had exclusive knowledge or access to material facts about the vehicle and engines that were and are not known or reasonably discoverable." (Compl. ¶41).

Second, the Complaint alleges that the Plaintiffs' vehicle contained a "Battery Defect" in that Plaintiffs were required to "replace the battery as often as every ten thousand [miles] or one year, well before the useful life of an automotive battery." (Compl. ¶4). Plaintiffs allege that "the premature battery wear is the result of excessive energy demands placed on the battery by the

N63 engine's cooling system components." (Compl. ¶8). Defendants, they allege, "failed to incorporate in their initial design a power source that could adequately provide for the N63's energy demands, instead providing an insufficient 90 ampere hour (Ah) battery as original equipment." (*Id.*). The Complaint alleges that Defendants first acknowledged the Battery Defect in December 2014, when they issued Technical Service Bulletin SI B61 30 14 which "instructed BMW dealers to replace the batteries of vehicles with the N63 engine at every engine oil service covered under the 4 year/50,000 miles BMW Maintenance Program." (Compl. ¶9).

Plaintiffs' core grievance seems to be this: "Defendants have taken no steps to provide a remedy for the Plaintiffs' vehicle once the Certified Pre Owned Warranty expires," and, upon the warranty's expiration, "Plaintiffs will be forced to replace their vehicle's battery as often as once a year or 10,000 miles, at a significant expense." (Compl. ¶¶52-53).

The Complaint alleges that Defendants were aware of both the Oil Consumption Defect and the Battery Defect but "have fail[ed] to disclose and ha[ve] actively concealed the existence and nature of the defects from Plaintiff at the time of purchase or lease and thereafter." (Compl. ¶55). Plaintiffs further allege that "Defendants have not recalled the vehicle to remedy the def[ects] and 'have not offered to reimburse the vehicle owners who incurred costs relating to oil consumption, battery, and related problems." (Compl. ¶58). Thus, Plaintiffs allege, they "have not received the value for which they bargained when they purchase[d] the vehicle." (Compl. ¶61). The Complaint does not detail the amount, if any, that Plaintiffs paid out-of-pocket to repair their vehicle. Plaintiffs submit only that "Defendants have caused [them] to expend money at their dealerships and service centers and/or to take other remedial measures." (Compl. ¶57).

The Complaint asserts the following causes of action against Defendants BMW NA and BMW AG:

> **Count 1** – Violations of the New Jersey Consumer Fraud Act
> ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*,

**Count 2** – Breach of Express Warranty

**Count 3** – Breach of Implied Warranty

**Count 4** – Breach of the Covenant of Good Faith and Fair Dealing

**Count 5** – Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301

**Count 6** – Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a through 42-110q

**Count 7** – New Jersey Unfair Trade Practices, N.J. Stat. Ann. § 56:8-2

**Count 8** – Fraud by Omission

**Count 9** – Unjust Enrichment

(Compl. ¶¶71-182).

The Complaint also asserts violations of New Jersey's criminal code against Defendant Bergamatto. (Compl. ¶¶187-198). The criminal allegations involve an altercation between Plaintiffs and David Bergamatto at a separate dealership, Park Avenue BMW in South Hackensack, New Jersey. Plaintiffs allege that "as they were attempting to get into their vehicle and leave BMW of Park Ave," Bergamatto "stood behind Plaintiff[']s car and would not allow her to continue her daily routine." (Compl. ¶186). Plaintiffs allege that they "were unlawfully restrained so they were not able to leave at their own liberty." (Compl. ¶192). Further, they allege that when Bergamatto stood behind their vehicle, he "call[ed] the local authorities and falsely made a report to the police that Plaintiffs were trespassing and that he wanted Plaintiffs off of private property." (Compl. ¶195).

Plaintiffs filed criminal charges against Bergamatto in South Hackensack municipal court. The final portion of the civil complaint here reproduces those State charges, which apparently remain pending. The Plaintiffs here assert six violations of New Jersey criminal law: N.J. Stat. Ann. §§ 2C:33-4(b) (harassment), 2C:33-2(2)(b) (Disorderly Conduct), 2C:13-3 (False Imprisonment), 2C:28-4(b)(1)(2) (False report to Law Enforcement), and 2C:28-3(a)(b)(1)(2)(3)(4)(Unsworn falsification to authorities). As alleged in the

6

Complaint, Bergamatto filed criminal charges against Plaintiffs as well. (Compl. ¶198)[6]

Defendants BMW NA and Bergamatto separately move to dismiss the Complaint on various grounds. (DE 7, 13) BMW NA submits that the matter should be dismissed because (1) there is no diversity of citizenship, and the sole federal claim is defective on its face, so subject matter jurisdiction is lacking; (2) Plaintiffs lack Article III standing; and (3) each state law claim is deficient. (DE 13-1 at 6-22). Bergamatto argues that the Complaint should be dismissed because (1) the Court lacks subject matter jurisdiction over the action; (2) venue in this District is improper; and (3) the Complaint fails to state a claim upon which relief can be granted. (DE 7-1 at 3-16).

Plaintiffs' responses take the form of an answer to a complaint. (DE 18; duplicate filing at DE 23) While unsigned and containing no case law, it appears to contain Plaintiffs' response to Defendants' arguments. In light of Plaintiffs' *pro se* status, I will consider it, and will independently analyze the merits of Defendants' contentions.

## II.   Applicable Standards

In considering a motion to dismiss, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780

---

[6]    Thus, the parties filed in the municipal court what amount to cross-complaints. Bergamatto submits an attorney affidavit attaching certain public records of the South Hackensack Municipal Court. (DE 7-1) The allegations against Bergamatto in this action appear to be simply a reproduction of those criminal charges, with no attempt made to state a civil cause of action.

F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'"); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("[E]ven a pro se complaint must state a plausible claim for relief.").

I have construed the plaintiffs' pleadings in that liberal spirit, and have opted to disregard certain procedural irregularities.

### A. Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Here, for example, I consider the warranty on which Plaintiffs base certain of their claims.

Typically, the court may take judicial notice of the existence of pleadings in another court, where their authenticity is not challenged:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Here, for example, I note the existence of criminal cross-complaints in the South Hackensack Municipal Court, without, of course, taking a position on the truth of the allegations therein.

**B. Rule 12(b)(1) Jurisdictional Challenge**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp.*

*Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court considers only the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The standard is thus equivalent to that on a Rule 12(b)(6) motion.

By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Id.* Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008). *See also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

## III.   Discussion

### A.   Subject Matter Jurisdiction

A federal court is a court of limited jurisdiction and may hear a case only if some statute grants it subject matter jurisdiction. With one exception, the Complaint asserts state-law causes of action, which ordinarily would be pursued in state court. If these claims are to be pursued in federal court, some basis for this Court's subject matter jurisdiction must be alleged and demonstrated.

The two essential bases for federal jurisdiction are diversity of state citizenship, 28 U.S.C. § 1332(a), and the existence of a federal question, 28 U.S.C. § 1331. Diversity jurisdiction, if applicable, would permit the Court to hear all of the state law claims. The presence of a valid federal-law claim would give this court a jurisdictional toehold for supplemental jurisdiction over related state law claims that are deemed to be part of the same case or controversy. *See* 28 U.S.C. § 1367.

### 1. Diversity

Setting aside the Magnusson-Moss Warranty Act claim, discussed below, all of the claims in the Complaint arise under state law. One potential basis for a federal court's subject-matter jurisdiction over such state-law claims—indeed, the basis that is pled in the Complaint—is diversity jurisdiction under 28 U.S.C. § 1332(a). (Compl. ¶17). Complete diversity of citizenship, however, is not pled here. Moreover, the evidence before the Court suggests that this is no mere pleading error; diversity of citizenship appears to be lacking in fact.

It is fundamental that diversity jurisdiction exists only when there is "complete diversity" of the parties. 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). In other words, "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). I therefore examine the pleadings, and also the evidence pertinent to jurisdiction that has been placed before the Court.

For diversity purposes, an individual plaintiff's state citizenship is that person's domicile at the time the action is filed. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). Technically, the complaint does not allege the Plaintiffs' domicile as such; it does allege, however, that the plaintiffs' addresses are in Paterson, New Jersey, and Yonkers, New York. At the time of filing of the action, February 25, 2020, plaintiffs Hammond and Tyler signed the complaint, giving their address as Genesee Avenue in Paterson, New Jersey. (Compl. at 33). The address of record they gave the Court, too, was Genesee Avenue in Paterson, New Jersey. (*See* case docket.) There is an indication of a subsequent change of address, which is not relevant to the jurisdictional question. By letter filed on the docket on November 11, 2020, plaintiff Nicholas Taylor advised the Court that "both plaintiffs ha[d] recently moved" from Paterson, New Jersey, to Yonkers, New York, and requested that future correspondence be directed to the Yonkers address. (DE 14). But Plaintiffs' subsequent responses to this motion to dismiss, filed January 21 and February 12, 2021, continue to list the Paterson, NJ address.

(DE 18, 23). All of the evidence placed before the Court points to at least one plaintiff's New Jersey citizenship at the time the Complaint was filed.

The Complaint alleges that Defendant BMW NA is likewise a citizen of New Jersey. (Compl. ¶¶ 18, 66). The state citizenship of defendant Bergamatto is not alleged. At any rate, the complaint lacks any allegation, even a general one, that BMW NA, Bergamatto himself, or the dealership (Park Ave BMW), is a citizen of some state other than New Jersey.[7]

The Complaint alleges that "there is minimal diversity because at least one plaintiff and one defendant are citizens of different states." (Compl. ¶17). Minimal diversity is insufficient, however; as noted, every plaintiff must be diverse from every defendant. At best, the citizenship of the plaintiffs has not been adequately alleged. Indeed, the Complaint comes very close to affirmatively alleging that at least one plaintiff and one defendant are citizens of New Jersey. Either way, there is no sufficient allegation that the parties are of diverse citizenship.[8] Diversity jurisdiction is therefore lacking.

---

[7]     It is inferable that Bergamatto is employed by the dealership in New Jersey, but the complaint and the papers submitted in evidence do not contain his home address. The entity (possibly) named as a defendant seems to be Park Avenue BMW, a dealership located not far from Plaintiffs' residence in Paterson. (Certain papers attached to its motion papers bear the heading "Park Avenue Motor Corp."). In its motion to dismiss, Park Avenue BMW confirms that it is a dealership located at 530 Huyler Street in South Hackensack, NJ. That is also the location at which the plaintiff served Bergamatto with the summons and complaint. (DE 9). Assuming that the dealership is a corporation, it is a citizen of the state of its incorporation and principal place of business. 28 U.S.C. § 1332(c). If a partnerhip or LLC, it shares the citizenship of its constituent members. *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014–15 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members."). Where that information remains unknown to the plaintiff after reasonable inquiry, plaintiff may allege more generally that the entity is a citizen of a different state, leaving the facts to be explored in discovery. *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).

[8]     I do not reach the second requirement of diversity jurisdiction, that the amount in controversy exceed $75,000. It appears likely that the price of even an entire replacement 2013 BMW, let alone the allegedly defective components, would not approach $75,000. There is, however, a demand for $250,000 in punitive damages. Punitive damages may count toward the jurisdictional amount. *See Frederico v. Home*

### 2. Federal question

An alternative potential basis for this Court's subject matter jurisdiction is "federal question" jurisdiction. Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a claim to "arise under" the Constitution, federal law, or a treaty, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiffs' cause of action." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974) (citing *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)).

All claims against Bergamatto, and all but one claim against the remaining defendant, BMW NA, are state-law claims. The only federal-law claim against BMW NA is the MMWA claim (Count V). That is the only potential basis for federal-question jurisdiction, and, should it be dismissed, the entire federal case would fall with it.

### a.  Bergamatto

The Complaint alleges that Mr. Bergamatto obstructed Plaintiffs' exit from the Park Ave BMW dealership and harassed them, in violation of various provisions of the New Jersey criminal code. (Compl. ¶¶183-198). None of these are civil causes of action at all. They are frivolous on their face, and if I took jurisdiction as an initial matter, I would surely dismiss them on a Rule 12(b)(6) standard. As relevant to jurisdiction, however, the point is that they arise, if at all, under New Jersey state law.

No federal cause of action is asserted against Bergamatto. The allegations against Dave Bergamatto/Park Ave BMW do not give rise to federal question jurisdiction under 28 U.S.C. § 1331.

### b.  BMW NA

There is only one claim in the complaint that even purports to be a federal-law claim: Plaintiffs' MMWA claim against BMW NA. That, to be sure,

---

*Depot*, 507 F.3d 188, 198 (3d Cir. 2007). I do not reach the issues of whether punitive damages are legally available or plausibly alleged.

would be sufficient to support federal-question jurisdiction, so I accept jurisdiction, at least provisionally. Defendant BMW NA submits, however, that the MMWA claim is insufficient as a matter of law. If it is dismissed, then the basis for this court's federal-question jurisdiction disappears. I therefore consider the sufficiency of the MMWA claim, and then the jurisdictional implications of dismissal.

### i.  Motion to dismiss MMWA claim

Here, BMW NA submits that Plaintiffs' MMWA claim must be dismissed because they have not sufficiently pleaded a viable underlying breach-of-warranty claim. (DE 13-1 at 12-16). Plaintiffs may have other viable causes of action against BMW NA—I make no ruling on that—but I agree that the MMWA claim is insufficient. In short, the Complaint appears to allege that BMW NA serviced the car under the warranty in 2017, during its term (it expired in 2019), but does not plausibly allege any out-of-pocket expense, complaining primarily that repairs are likely to be necessary in the future.

In relevant part, the MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA itself does not "provide any substantive law, but rather imports state law on implied and express warranties." *Marcus v. BMW of N. Am., LLC*, No. 08-5859 KSH, 2010 WL 4853308, at *7 (D.N.J. Nov. 19, 2010), *vacated and remanded on other grounds*, 687 F.3d 583 (3d Cir. 2012); *see also Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) ("Magnuson–Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims."). Thus, the viability of Plaintiffs' Count V MMWA claim is premised on the viability of the state-law express and implied warranty claims asserted in Counts II and III.

### a. Express Warranty Claim

<u>Straight breach of warranty</u>

I consider first a straight breach-of-warranty theory. Commonly, an express warranty requires the seller to perform certain acts, such as repair and replace defective parts, for a specified time period. Generally, "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (alteration in original) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir.1986)) (rejecting the argument that a MMWA claim may be asserted for defects that were not discovered until after the warranty period.). "That rule applies regardless of whether the defect existed prior to the expiration of the warranty." *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2010 WL 3636253, at *6 (D.N.J. Sept. 8, 2010).

Plaintiffs' real agenda here seems to be an extension of the duration of the warranty. There seems to be no out-of-pocket loss alleged. The essential grievance asserted is this: "Defendants have taken no steps to provide a remedy for the Plaintiffs' vehicle once the Certified Pre Owned Warranty expires," and, upon the warranty's expiration, "Plaintiffs will be forced to replace their vehicle's battery as often as once a year or 10,000 miles, at a significant expense." (Compl. ¶¶52-53).

There is no clear allegation that the Defendants ever failed to honor the warranty during its term, or that they charged Plaintiffs for repairs that should have been covered by the warranty.[9] Rather, Plaintiffs allege that they *may* incur damages after the warranty expires. (Compl. ¶¶52-53). The warranty expired in September 2019. There is no actionable express warranty claim

---

[9]   The only allegation that comes close is a vague statement that "Defendants have caused [Plaintiffs] to expend money at their dealerships and service centers and/or to take other remedial measures." (Compl. ¶57). That is far too vague to set forth a breach of Defendant's warranty obligations.

going forward for costs incurred after the expiration of the warranty period. *Duquesne*, 66 F.3d at 616.

Thus, no valid express warranty claim is pled. [10]

---

[10]    In light of Plaintiffs' *pro se* status, I briefly discuss a claim that is not pled but might be the subject of amendment: a claim that the warranty failed of its essential purpose. The overriding concern of such a claim is that the seller may run out the clock on the warranty while failing to fix the problem.

In *In re Caterpillar , Inc., C13 and C15 Engine Products Liability Litigation,* No. 14-3722, 2015 WL 4591236, at *20 (D.N.J. July 29, 2015), the district court considered an express warranty claim under UCC 2-313 that the goods failed to conform to the seller's description. *Id.* at 23. That court held that the plaintiffs "adequately alleged that [the defendant] breached the Engine Warranty because Plaintiffs presented their vehicles for service during the warranty period, and despite repeated attempts, Caterpillar was unable to repair the defect." *Id.* Therefore, the court found that the plaintiffs "sufficiently pleaded that the Engine Warranty failed of its essential purpose." *Id.* That essential purpose, presumably, was to ensure that a covered defect is repaired or replaced within the warranty period.

Here, the Complaint alleges that, while the warranty was in effect, Plaintiffs brought their vehicle in to be serviced by BMW. On January 10, 2017, the engine oil was serviced under warranty. (Compl. ¶22). After that, Plaintiffs returned to the dealership, with various complaints, including excessive oil consumption, apparently all in 2017. (Compl. ¶¶23-25). It is not clear from the Complaint what further services were provided, or whether such services were covered under warranty. Plaintiffs do generally allege multiple visits and ongoing complaints of excessive oil consumption and/or battery depletion.

Critically, however, this action was filed in 2020, and Plaintiffs do not allege any issues after 2017. As of 2017, the warranty still had two years to run; it expired only in September 2019. (DE 13-2 at 5) The Complaint was filed in February 2020, almost three years after the last allegation of abnormal oil consumption. What happened, if anything, after 2017 is not alleged.

What Plaintiffs are alleging is that they believe they *will* have to replace the vehicle's battery as often as once a year or every 10,000 miles. (Compl. ¶¶52-53). As explained by the *Caterpillar* court, the failure of essential purpose doctrine allows courts to "set aside a limited remedy and permit alternative recovery," but a plaintiff "may not invoke the doctrine to void the durational limits" of a warranty. 2015 WL 4591236 at *24. The facts as alleged would not permit the court to override the durational limits of the now-expired CPO Warranty—at least not without further facts not alleged here.

Unconscionability

Plaintiffs also submit that the CPO warranty is unconscionable, primarily because Defendants allegedly knew beforehand of defects that would manifest themselves outside the warranty period.[11] (Compl. ¶93)

Unconscionability may be "substantive" or "procedural." *Skeen v. BMW of N. Am., LLC*, No.13-1531, 2014 WL 283628, at *13-14 (D.N.J. Jan. 24, 2014). A contract term is substantively unconscionable if it is "excessively disproportionate" and involves an "exchange of obligations so one-sided as to shock the court's conscience." *Id.* Procedural unconscionability focuses on the circumstances of the negotiation and the personal circumstances of the negotiators. *Id.*

In *In re Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*, a court in this district court explained two lines of cases concerning alleged unconscionable express warranties due to the defendant's knowledge of a defect prior to sale:

> Numerous courts in this District have had occasion to address similar unconscionability arguments in the context of express warranty claims. Two lines of cases have emerged. In the first, courts have permitted breach of express warranty claims to proceed to discovery where plaintiffs sufficiently alleged a manufacturer's knowledge of a defect prior to sale. *See In re Samsung DLP Television Class Action Litig.*, Civ. 07–2141(GEB), 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (finding that plaintiffs adequately alleged procedural and substantive unconscionability where defendant knew of defect at time of sale, consumers had no meaningful choice in time limitations of

---

[11]     The complaint also suggests more directly that the warranty's time limits are so short as to deny consumers adequate protection (Compl. ¶94). This warranty, designed to run six years from the original purchase of the car, ran for three years from Plaintiffs' purchase of the used car in 2016. No case of which I am aware has held a six-year new car warranty or a three-year used car warranty to be unconscionably short. *See, e.g., Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *9-11 (D.N.J. Dec. 5, 2019) (finding a three-year warranty not unconscionably short); *Caterpillar*, 2015 WL 4591236 at 20 (finding that a warranty's durational limit of two years was not categorically unconscionable); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012) ("[T]here is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty.").

warranty, and there was a significant disparity in bargaining power); *Payne v. Fujifilm U.S.A., Inc.*, Civ. 07–385(JAG), 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (noting that plaintiff specifically alleged that defendant knew, or should have known, of the alleged defect in the product and defendant failed to disclose same to members of the class). In the other, courts have granted dismissal motions where plaintiffs alleged a manufacturer's knowledge of a latent defect that would manifest outside the warranty period. *See Alban v. BMW of N. Am.*, Civ. 09–5398(DRD), 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) ("[A]llegations that [defendant] knew that the sound insulation in [plaintiff's] vehicle would fail after the expiration of the warranty agreement do not indicate that the time and mileage limitation clause was unconscionable."); *Nelson v. Nissan N. Am., Inc.*, 894 F.Supp.2d 558, 565 (D.N.J. 2012) (same); *Gotthelf v. Toyota Motor Sales*, U.S.A., Inc., Civ. 11–4429(JLL), 2012 WL 1574301, at *20 (D.N.J. May 3, 2012), *aff'd*, 525 F. App'x 94 (3d Cir. 2013) (same). These cases follow from the understanding that "the general rule, stated in [*Duquesne*], prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to Plaintiff's claims regardless of [the] assertion that [the manufacturer] knew that his vehicle was defective before the time-limit took effect." *Alban*, 2011 WL 900114, at *9.

*Caterpillar*, No. 14-3722, 2015 WL 4591236, at *20 (D.N.J. July 29, 2015) (alterations in original).

*Caterpillar* noted that the "latter line of cases, rejecting conclusory allegations of unconscionability based on knowledge of a latent defect, represents the recent trend in this District and is consistent with the prevailing approach elsewhere." *Id.* at 21 (citing *T.J. McDermott Transp. Co. v. Cummins, Inc.*, Civ. 14–04209 (WHW), 2015 WL 1119475, at *9 (D.N.J. Mar. 11, 2015); *Majdipour v. Jaguar Land Rover N. Am.*, LLC, Civ. 12–07849(WHW), 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013)). *Duquesne*, in particular, adopted the Second Circuit's rule that an express warranty does not cover repairs after the expiration of the warranty period, regardless of whether the defect was discovered before or after the warranty's expiration. 66 F.3d at 616 (3d Cir.

1995) (citing *Abraham*, 795 F.2d at 249-50). In *Abraham,* the Second Circuit explained:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. *A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.*

795 F.2d at 250 (emphasis added). Following *Abraham*, repairs made after the expiration of the warranty are not actionable even if the defendant had prior knowledge of the defect. *See Dewey v. Volkwagen AG*, 558 F. Supp. 2d 505, 201 (D.N.J. 2008) ("In relying on *Abraham*, the Third Circuit was unquestionably aware of the Second Circuit's view that '[m]anufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.'").

Like Plaintiffs here (Compl. ¶¶87-95), the plaintiffs in *Caterpillar* alleged that the terms of their warranties were unconscionable. *See* 2015 WL 4591236 at *19. There, the plaintiffs pointed to a defect in the defendant's "exhaust emission control system, known as the Caterpillar Regeneration System ('CRS'), intended to reduce air pollutants . . . in compliance with the EPA's 2007 Emissions Standard." *Id.* at 2.  The plaintiffs alleged "that the CRS [wa]s unable to maintain reliable thermal management of exhaust temperatures as required to achieve regeneration under all operating conditions and applications." *Id.* at 3. Further, the plaintiffs alleged that the defect "result[ed] in repeated breakdowns; lengthy, ultimately unsuccessful, repair attempts; significant reduction in vehicle value; and out-of-pocket expenses such as towing bills, repair invoices, and lodging and transportation charges." *Id.* Moreover, the

plaintiffs contended that the defect could not be fixed or corrected and that all affected vehicles must therefore be replaced. *Id.*

Those plaintiffs' claims for breach of express warranty were premised on the Caterpillar Limited Warranty ("Engine Warranty") and the Federal Emissions Control Warranty, the latter of which the court concluded was preempted by federal law. *Id.* at 2, 4. "Through the Engine Warranty, [the defendant] 'warrant[ed] new 10.3 liter up to and including 18.1–liter engines sold by it for use in powering onhighway vehicles to be free from defects in material and workmanship.'" *Id.*

Regarding their unconscionability claim, those plaintiffs alleged that the Defendant's restriction in the Engine Warranty to cover only "'workmanship and material' defects" was unconscionable in light of its "superior knowledge of the CRS design defect and the parties' unequal bargaining power." *Id.* The court rejected that argument because (1) "the terms of the Engine Warranty, limiting the covered defects to material and workmanship and setting a durational limit of two years, are not categorically unconscionable" and (2) based on the *Duquesne* line of cases, knowledge of a latent defect alone does not render limitations in a warranty unconscionable. *Id.* at 19-22.

The *Caterpillar* plaintiffs alleged that the defendant "knew at the time of sale of an inherent defect in the emissions control system which was so pervasive that they could not have been surprised when purchasers experienced problems and initiated warranty claims immediately after the Engines hit the market" and that the defendant's ability "'to ad infin[i]tum ineffectually 'repair' the defect with the full knowledge that the same issues will continually manifest and recur' render[ed] th[e] case distinguishable from those where courts rejected unconscionability." *Id.* at 22 (first alteration in original). The court rejected that argument and noted that it was "hard-pressed to understand how [the defendant's] efforts to fulfill their obligations during the warranty period renders its conduct more objectionable than cases where manufacturers were alleged to have waited-out the warranty period without

20

taking any action to address a known defect." *Id.* The court also noted that the plaintiffs' procedural unconscionability contentions regarding defendants' knowledge of the defect and the lack of equal bargaining power were entirely conclusory. *Id.* For those reasons, the court found the plaintiff's "allegations of unconscionability insufficient to expand the scope or alter the terms of the Engine Warranty." *Id.*

However, In *Skeen*, a court in this District found that the plaintiffs sufficiently pleaded that the applicable warranties were unconscionable where they alleged that the "[d]efendants knew the defects would manifest and manipulated the warranty term to make sure it did not happen until after the warranty term expired." 2014 WL 283628 at *14-16. Additionally, the court found that plaintiffs therein sufficiently pleaded substantive unconscionability because the defendants alone knew that the product at issue would fail and "manipulated the warranty terms to avoid paying for it." Id. at *14.

*Caterpillar,* which is closer to the facts at hand, controls. Plaintiffs here allege that the CPO warranty is unconscionable because Defendants were aware of the alleged defects. Under the *Duquesne* line of cases, however, simple knowledge of a defect does not render a warranty unconscionable. *See Caterpillar*, 2015 WL 4591236 at *19-21. Moreover, Plaintiffs do not allege that Defendants manipulated the CPO Warranty so that the alleged defects would emerge after the warranty period. (*See* Compl. ¶¶87-95). To the contrary, the alleged defect manifested itself, and Defendants serviced the vehicle's engine issues, under the warranty, which was of a reasonable duration. (Compl. ¶22). Therefore, *Skeen* is distinguishable and Plaintiffs' unconscionability claim must fail.

### b. Implied Warranty Claim

Defendant also submits that Plaintiffs' breach of implied warranty claim fails to the same extent as the express warranty claims because "BMW NA limited the duration of any implied warranties to the duration of the express

warranty." (DE 13-1 at 15). The CPO Warranty, under which Plaintiffs purchased their vehicle (Compl. ¶21), provides as follows:

> THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, IS LIMITED TO THE DURATION OF THE EXPRESS WARRANTIES HEREIN. BMW NA HEREBY EXCLUDES INCIDENTAL AND CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF TIME, INCONVENIENCE, OR LOSS OF USE OF THE VEHICLE, FOR ANY BREACH OF ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, APPLICABLE TO THIS PRODUCT.[12]

(DE 29 at 41).

New Jersey law permits the exclusion or modification of warranties where, *inter alia*, such exclusion or modification is written and conspicuous. N.J. Stat. Ann. § 12A:2-316(2). Further, the United States Court of Appeals for the Third Circuit has held that, consistent with that statute, an express warranty may displace the implied warranty of merchantability. *New Jersey Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 330-31 (3d Cir. 2007). In such a case, a plaintiff has no claim for breach of implied warranty after the time limitation of the express warranty has expired. *Id.* ("Because we conclude that in this case there was no implied warranty of fitness for a particular purpose, and that the implied warranty of merchantability was displaced by paragraph 55's express warranty after one year, we hold that at the time Transit's TGIV was destroyed by fire, all warranties had expired.").

Similarly, in *McCalley v. Samsung Electronics America, Inc.*, a court in this District interpreted language similar to that of the CPO Warranty provision cited above and held that implied warranty claims were limited to the time restrictions imposed by the express warranty. No. 07-2141, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008). There, the relevant warranty provided as follows:

---

[12]   Because the CPO warranty is explicitly relied upon in the Complaint, I will consider the copy of the warranty that is attached to Defendant's papers. *See Rockefeller Ctr. Props.*, 184 F.3d at 287.

THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE, **AND NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE**, AND NO OTHER EXPRESS WARRANTY OR GUARANTY GIVEN BY ANY PERSON, FIRM OR CORPORATION WITH RESPECT TO THIS PRODUCT SHALL BE BINDING ON SAMSUNG.

*Id.* at *6 (emphasis added). The court concluded that the "warranty clearly provide[d] coverage for one year following the date of purchase, and disclaim[ed] additional warranties, including the implied warranties of merchantability and fitness for a particular purpose." *Id.* And that warranty "applie[d] explicitly the limited one-year duration to both the express and implied warranties." *Id.* After concluding that the one-year period had expired, the *McCalley* court held that the plaintiff's "breach of implied warranty claim fail[ed] because the duration of the implied warranty period is consistent with the express warranty period, or in other words one year." *Id.* at *7; *see also* N.J. Stat. Ann. § 12A:2-317 ("Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant.").

The CPO Warranty is similar. Because the CPO Warranty limited the duration of any implied warranties to the duration of the express warranty, the implied warranty claims likewise must be dismissed. Again, Plaintiffs allege possible damages arising in the future that will not be covered by the warranty. However, as explained above, warranties do not cover repairs made after the expiration of the warranty period. Because the Plaintiffs' warranty has expired, their express and implied claims must fail. And, because those claims provide

the basis for a MMWA claim, that federal claim must fail as well.[13] *See Marcus*, 2010 WL 4853308 at *7.

The MMWA claim, the only federal claim in the action, must therefore be dismissed. It follows that there is no federal question, and no federal-question subject matter jurisdiction under 28 U.S.C. § 1331. Against BMW NA, then, only state-law claims remain.

## B.    Supplemental jurisdiction

In short, the plaintiffs may have claims, but they are not warranty claims; because they are not warranty claims, the MMWA claim fails; and because the MMWA claim has been dismissed, there is no federal question remaining in the case. Where all federal claims have been dismissed, a federal court may continue to exercise supplemental jurisdiction over remaining state law claims, but Defendants submit that the Court should decline to do so. I agree.

Under 28 U.S.C. § 1367(c), the Court has discretion to decline jurisdiction over remaining claims after all federal claims have been dismissed

---

[13]    Defendant BMW NA also submits that the Complaint fails to allege a sufficient basis for standing. Pursuant to Article III of the United States Constitution, standing contains three elements: (1) a plaintiff must have suffered an "injury in fact" which is an invasion of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of; and (3) the injury must likely be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation and quotation marks omitted). To satisfy Article III requirements, the injury complained of "must affect the plaintiff in a personal and individual way." *Id.* at 561.

Here, the Complaint does not specify what, if any, out-of-pocket costs Plaintiffs incurred. Plaintiffs submit only vaguely that "Defendants have caused [them] to expend money at their dealerships and service centers and/or to take other remedial measures." (Compl. ¶57). The Complaint alleges that "Defendants have taken no steps to provide a remedy for [their] vehicle once the Certified Pre Owned Warranty expires," and that, upon expiration, "Plaintiffs *will be* forced to replace their vehicle's battery as often as once a year or 10,000 miles, at a significant expense." (Compl. ¶¶52-53) (emphasis added).

Such allegations are admittedly vague and somewhat speculative. Nevertheless, because I find subject matter jurisdiction lacking on other grounds, I will not reach the more complex standing issue.

from the action. The Third Circuit has held that where the federal claims that gave the basis for original jurisdiction are dismissed, a "district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent extraordinary circumstances"). In short, the presumptive rule is that the state claims shall be dismissed, unless reasons of economy and fairness dictate otherwise.

Thus, where the case has been substantially litigated, it may be a proper exercise of discretion to retain it. *See Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1284–85 (3d Cir. 1993) (remanding for exercise of discretion as to whether to retain pendent claim, noting that where the district court already heard all evidence necessary to decide the state contract claim, it might retain jurisdiction). Where, on the other hand, the case is nowhere close to trial, dismissal or remand is likely the proper course. *Freund v. Florio*, 795 F. Supp. 702, 710 (D.N.J. 1992) ("[A]t this early stage in the litigation, dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties.").

Here, there has been no discovery, and the matter is nowhere near trial. The motions to dismiss currently before the Court are the first motions in this action. Because the matter has not been substantially litigated, I decline to exercise supplemental jurisdiction over the remaining claims.

Therefore, I will grant the motion of BMW NA to dismiss this action in its entirety.

## IV.    Conclusion

For the reasons set forth above, I will grant Defendants' motion (DE 7; DE 13) and dismiss the action. This dismissal is entered without prejudice to

the filing within 30 days of a proposed amended complaint that remedies the defects of the MMWA count.

An appropriate order follows.

Dated: March 29, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**